## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 62 | **DATE** | March 27, 2003 |
| **CASE TITLE** | AD II Engineering v SRAM Corp. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ■ Status hearing set for 4/9/03, at 9:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, AD-II's motions for summary judgment are denied and SRAM's motion for partial summary judgment on infringement on claim 7 is granted. Summary judgment is granted to SRAM on all of AD-II's unfair competition claims.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| X | Notices mailed by judge's staff. | | | | 45 |
| | Notified counsel by telephone. | | MAR 28 2003 | | |
| | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| GDS | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 03 MAR 27 PM 12: 01 Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials | |

SRAM CORPORATION, )
)
Plaintiff, )
)
) No.    00 C 6675
v. )
) Judge Robert W. Gettleman
AD-II ENGINEERING, INC., )
)
Defendant. )
_____ )
)
AD-II ENGINEERING, INC., )
)
Plaintiff, )
)
) No.    01 C 0062
v. )
) Judge Robert W. Gettleman
SRAM CORPORATION, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

In these consolidated cases, SRAM Corp. has sued defendant AD-II Engineering, Inc. for

infringement of patent no. 5,662,00 (the "'000 patent"), and AD-II has sued SRAM for a

declaration of non-infringement, tortious interference with prospective business relations, unfair

competition in violation of the Lanham Act, the Illinois Uniform Deceptive Trade Practices Act

and Illinois common law (jointly as the "unfair competition claims"). SRAM has moved for

summary judgment of infringement. AD-II has moved for summary judgment of non-

infringement and for summary judgment of all of its unfair competition claims. For the reasons

45

set forth below, SRAM's motion for summary judgment of infringement is granted. AD-II's motion for summary judgment on all its claims is denied.

## FACTS

Since 1988 SRAM has made and sold twist shifters for use on derailleur-equipped bicycles under the tradename Grip Shift. The Grip Shift is a way of shifting gears without removing all or part of the rider's hand from the handlebar. Instead, the rider changes gears by twisting part of the handgrip. AD-II, a Taiwan company, also sells a bicycle gear shift system that operates by twisting part of the handgrip. SRAM alleges that AD-II's shifters infringe claims 7 and 8 of the '000 patent, which is entitled "Detente Spring for Rotatable Grip Actuating System." Claim 7 provides[1]:

> 7. A rotatable handgrip actuating system for releasing or pulling a tensioned cable, the system comprising:
>
>> a support member having a generally cylindrical outer surface;
>>
>> a grip disposed over said generally cylindrical outer surface of said support member and rotatable relative thereto in a first direction and in a second direction opposite said first direction, a generally cylindrical inner surface of said grip facing said outer surface of said support member, one of said inner surface and said outer surface having a plurality of detent positions formed therein; and
>>
>> a spring metal detent spring disposed between said grip and said support member and engageable with one of said detent positions, said detent spring providing a first resistance against being forced out of said one detent position when said grip is rotated with respect to said support member in said first direction, said detent

---

[1]A detailed description of the prosecution history of Claim 7 is set forth in the court's July 9, 2001, Memorandum Opinion and Order denying AD-II's first motion for summary judgment of non-infringement. SRAM Corp. v. AD-II, 155 F. Supp. 2d 826 (N.D. Ill. 2001) ("SRAM I"). Familiarity with SRAM I is assumed. SRAM I mistakenly identifies the patent in suit as No. 5,996,000.

spring providing a second resistance against being forced out of said one detent position when said grip is rotated relative to said support member in said second direction, said second resistance being greater than said first resistance, the difference between the first and second resistance due at least in part to the shape of the detent spring.

## SUMMARY JUDGMENT STANDARDS

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tennenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). The moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

3

# DISCUSSION

## I. Infringement/Noninfringement

### A. AD-II's Motion for Summary Judgment of Non-Infringement.

AD-II has moved for summary judgment of non-infringement, arguing that its accused device lacks certain elements of Claim 7. AD-II's motion is premised entirely on its argument that the court should reconsider its decision in SRAM I, which construed the term "support member" to mean "spring retaining member," and held that the spring retaining member was not required to be stationary. SRAM I, 155 F. Supp. 2d at 834-35. Absent reconsideration, AD-II admits it is not entitled to summary judgment because it "concedes that there is an issue of fact whether these limitations [in Element 2 of Claim 7] read on AD-II's shifters under this Court's construction of 'support member.'"

This is AD-II's third attempt to convince the court that the "support member" must be stationary. It is no more persuasive than its first two attempts. Ordinarily, this court would deny AD-II's request at a third bite of the apple without discussion, because this court's opinions on summary judgment motions are not "mere first drafts subject to revision and reconsideration at a litigant's pleasure." Quaker Alloy Casting Co. v. Gulf Co. Indust., Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1988). AD-II argues, however, that reconsideration is appropriate based on a change in law by the Federal Circuit's recent opinion in Rheox, Inc. v. Entact, Inc., 276 F.3d 1319 (Fed. Cir. 2002), issued after this court's opinion in SRAM I. Because a controlling or significant change in the law is a proper basis for a motion for reconsideration, Quaker Alloy, 123 F.R.D. at 288, the court considers AD-II's argument, despite its failure to actually bring such a motion before the court.

4

In SRAM I, AD-II argued that an amendment submitted by SRAM to the Patent and Trademark Office in response to a rejection of the patent evidences a disclaimer by SRAM of a "rotatable" or non-stationary support member. This court rejected that argument, in part because such an interpretation would result in the patent not reading on the third preferred embodiment. An interpretation that defines the invention in a manner that excludes a preferred embodiment is rarely, if ever, correct and requires highly persuasive evidentiary support, which this court found lacking. SRAM I, 155 F. Supp. 2d at 834 (citing, Vitronics Corp. v. Conceptronic, Inc., 90 F. 3d 1576, 1583 (Fed. Cir. 1996)).

AD-II now argues that Rheox demonstrates that this court's rejection of AD-II's construction because it would define the invention in a manner that would not read on a preferred embodiment was misplaced. In fact, it is AD-II's reliance on Rheox that is misplaced. Indeed, contrary to AD-II's assertion, Rheox creates no new law and is perfectly consistent with this court's construction. In Rheox the Federal Circuit recognized that an interpretation excluding a preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support, but then held that "where the prosecution history requires a claim construction that excludes some but not all the preferred embodiments, such a construction is permissible and meets the standard of highly persuasive evidentiary support." Rheox, 276 F. 3d at 1327. This holding followed, according to the court, from its "precedent that the prosecution history limits interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." Id. (emphasis added).

Nothing in SRAM I is inconsistent with Rheox. This court did not hold or even imply in SRAM I that evidence in a prosecution history that the applicant had disclaimed an interpretation

5

would not amount to "highly persuasive evidentiary support" sufficient to find that the patent should not read in the preferred embodiment. To the contrary, the court found no evidence in the prosecution history that SRAM had disclaimed any interpretation of the term "support member," except that the support member must retain the spring. SRAM I, 155 F. Supp. 2d at 833-34. This court found no evidence in the prosecution history that the applicant disclaimed a rotatable support member because all references in the amendment to "stationary" were made with specific respect to the description of the first two preferred embodiments only, in which the support member is stationary. Id.

In contrast, in Rheox, the patent was rejected originally and a second time as obvious over the prior art. In the instant case, the application was rejected because "antecedent basis is lacking in the form of language followed by a reference character, for 'support member'". The Rheox applicant responded to the rejection by amending its first claim, cancelling two other claims which had explicitly recited two specific chemical compounds found in the prior art, and amending a third claim to remove a reference to the chemical compound used by the alleged infringer. Rheox, 276 F.3d at 1322. In other words, the claim language in Rheox was changed to specifically eliminate that which the plaintiff later sought to claim. Faced with that prosecution history neither the district court nor the Federal Circuit had any difficulty concluding that the applicant had disclaimed any construction that included the three compounds explicitly removed from the claims, and that any inconsistencies in the written descriptions were not controlling. Id. at 1324, 1327.

In the instant case, the claim language was not changed at all, and this court found in SRAM I that the patent applicant had not disclaimed a "rotatable" support member. Therefore,

6

<u>Rheox</u> is inapplicable. Accordingly, AD-II's second motion for reconsideration and third and last request for claim construction, along with its motion for summary judgment of non-infringement is denied.

B. <u>SRAM's Motion for Partial Summary Judgment of Infringement</u>

SRAM argues, that accepting the court's construction of the term support member, AD-II's device contains each and every limitation of Claims 7 and 8,[2] either literally or under the doctrine of equivalents.

Determining whether an accused device infringes a patent requires a two-step analysis. First, the claims of the patent must be construed to determine the proper scope. Second, a determination must be made as to whether the properly construed claims read on the accused device. <u>Interactive Gift Express Inc. v. CompuServe, Inc.</u>, 231 F.3d 859, 864-65 (Fed. Cir. 2000). The first step, claim construction, is a question of law for the court. <u>Vivid Technologies, Inc. v. American Science & Eng'g, Inc.</u>, 200 F.3d 795, 804 (Fed. Cir. 1999). Only those terms in controversy need be construed, and only to the extent necessary to resolve the controversy. <u>Id</u>. To construe the claim, the court first examines the intrinsic evidence, consisting of the patent claims, specification and, if in evidence, the prosecution history. <u>Id</u>. If the intrinsic evidence alone is insufficient, extrinsic evidence, such as expert testimony, inventor testimony, dictionaries, technical treatises, articles and prior art not cited, may be examined. <u>Id</u>. Intrinsic evidence is preferred because it encompasses the materials in the public record. Therefore, if the intrinsic evidence alone resolves any ambiguity, it is improper to rely on extrinsic evidence. <u>Id</u>.

---

[2]Claim 8 is a dependent claim. The parties agree that if AD-II infringes Claim 7 it also infringes Claim 8.

The Federal Circuit has set forth the hierarchy of intrinsic evidence. Vitronics, 90 F.3d at 1577. First, the court examines the language of the claim. Id. "The starting point for any claim construction must be the claims themselves." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999).

If the claim language is clear on its face, the court's consideration of the rest of the intrinsic evidence is "restricted to determining if a deviation from the clear language of claim is specified. Deviation may be necessary if a patentee [has chosen] to be his own lexicographer and use terms in a manner other than their ordinary meaning." Interactive Gift, 231 F.3d at 865 (quoting Vitronics, 90 F.3d at 1582). A deviation from the clear language may also be necessary if a patentee has relinquished a potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference. Id.

If the claim language is not clear on its face, then the court considers the rest of the intrinsic evidence to resolve, if possible, the lack of clarity. The court must take care, however, to avoid reading limitations in the specification into the claims. Id.

Once the claims have been properly construed, the court must determine whether the accused device infringes the claims, either literally or under the doctrine of equivalents. Bai v. L&L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998). Literal infringement is a question of fact and may be decided on summary judgment when no genuine issue of material fact exists, such that no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device. Id. Infringement under the doctrine of equivalents is also a question of fact: "whether a reasonable jury could find that the accused device contains elements that are equivalent to each of the properly construed claim limitations."

8

Id. at 1354. It is pursuant to these standards that the court determines whether AD-II's device infringes Claim 7 of the '000 patent.

First, the preamble of Claim 7 describes "[a] rotatable handgrip actuating system for releasing or pulling a tension cable . . . ." It is uncontested that the preamble reads literally on AD-II's device.

Next, the first limitation of Claim 7 provides "a support member having a generally cylindrical outer surface." The court has already determined that AD-II's device has a support member with a generally cylindrical outer surface. SRAM I, 155 F. Supp.2d at 835.

The second limitation of Claim 7 provides:

A grip disposed over said generally cylindrical outer surface of said support member and rotatable thereto in a first direction and in a second direction opposite said first direction, a generally cylindrical inner surface of said grip facing said outer surface of said support member, one of said inner surface and said outer surface having a plurality of detent positions formed therein.

There is no dispute that the AD-II device has a grip, or that the grip is disposed over the generally cylindrical outer surface of the AD-II device's support member. Nor is there any real dispute that the grip rotates relative to the support member.[3] Nor can there be any dispute that the generally cylindrical inner surface of the grip faces the outer surface of the support member. The issue is the limitation that reads: "one of said inner surface and said outer surface having a plurality of detent positions formed thereon."

---

[3]It is true that in the AD-II device both the grip and the support member rotate, with the grip rotation forcing slightly less rotation of the support member. AD-II admits that its grip rotates relative to the support member in the cable release direction, but argues that the grip rotates together with the support member in the opposite (cable take-up) direction. Nonetheless, the grip clearly rotates more than the support member and, in any event, in its response to SRAM's motion, AD-II (p.3 n.7) "acknowledges that the grip limitation reads on its shifters as 'support member' has been construed by the court."

In SRAM I, this court found that on AD-II's device the plurality of detent notches are not located on either the outer cylindrical surface of the support member nor on the inner cylindrical surface of the grip. Instead, the notches are located on the inner cylindrical surface of the housing. Therefore, the court found that the AD-II device does not literally infringe Claim 7. The court thus left open the question of infringement under the doctrine of equivalents.

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co. Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997) (quoting Graver Tank and Mfg. Co. v. Linde Air Products Co., 339 U.S. 605 (1950)). It is designed to prevent unscrupulous copyists from making unimportant and insubstantial changes and substitutions in the patented device which, though adding nothing, would be enough to take the copied matter outside the claim. Graver, 339 U.S. at 607. "To temper unsparing logic and prevent an infringer from stealing the benefit of the invention, a patentee may invoke this doctrine to proceed against the producer of a device if it performs substantially the same function in substantially the same way to obtain the same result." Id. "The theory on which it is founded is that 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape.'" Id. (quoting Union Paper-Bag Machine Co. v. Murphy, 97 U.S. 120, 125 (1877)). "An element in an accused product is equivalent to a claim element if the differences between the two are insubstantial to one of ordinary skill in the art." Overhead Door Corp. v. The Chamberlain Group, 194 F.3d 1261, 1269 (Fed. Cir. 1999). Infringement, therefore, is not avoided merely by

reversing or transposing parts or components, or merely changing the form without changing the function. Corning Glass Works v. Sumitomo Elec. USA, Inc., 671 F. Supp. 1369, 1399 (S.D.N.Y. 1987). The determination of equivalence should be applied as an objective inquiry on an element-by-element basis, in order to preserve some meaning for each of a claim's elements, all of which are deemed material to defining the invention's scope. Warner-Jenkinson, 520 U.S. at 29.

SRAM argues that the AD-II device, which places the detent notches on the inner cylindrical surface of the housing, rather than the grip, is equivalent to the claimed element. To establish equivalence, SRAM first notes that AD-II has simply reversed the location of the detent notches from the preferred embodiment depicted in the patent by placing them on the inner surface of the support housing, arguing that infringement is not avoided merely by reversing or transposing the parts or components. Corning Glass Works, 671 F. Supp. at 1399.

In response, AD-II argues that SRAM's equivalence argument is precluded by the "all elements rule," which provides that a theory of equivalence cannot eviscerate a particular claimed element. See Warner-Jenkinson, 520 U.S. at 39 n.8. AD-II's all elements rule argument is premised almost entirely on Sage Prods., Inc. v. Devon Indus. Inc., 126 F.3d 1420 (Fed. Cir. 1997), which AD-II describes as holding that the all elements rule precludes resort to the doctrine of equivalents with respect to structural configurations differing from "a precise arraignment of structural elements that cooperate in a particular way to achieve a certain result" covered by a claim. Id. at 1425.

According to AD-II, Claim 7 delineates a precise arraignment of elements. The detent notches are set either on the inner cylindrical surface of the grip or the outer cylindrical service of

11

the support member. AD-II argues that under Sage Prods., because of the specificity of Claim 7, no equivalent is available. Any alteration of the claimed structure (as in the AD-II device) would have been foreseeable to SRAM and thus "could have been covered by claims with fewer structural encumbrances." Sage Prods., 126 F.3d at 1425.

AD-II's reading of Sage Prods. is far too broad, for it would in effect eviscerate the doctrine of equivalents for any structural claim. As subsequently explained by the Federal Circuit in Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1317 (Fed. Cir. 1998)(footnote omitted) (emphasis in original):

> We agree with Ethicon that, if read as argued by USSC, the above-quoted
> statements from Dolly, Weiner and Sage would force the All Elements rule to
> swallow the doctrine of equivalents, reducing the application of the doctrine to
> nothing more than a repeated analysis of literal infringement. Once a negative
> determination of literal infringement is made, that failure to meet a limitation
> would preclude a finding of infringement under the doctrine. The doctrine of
> equivalents would thus be rendered superflous under USSC's view, because a
> finding of non-infringement would be foreordained when a court has already
> found that the accused subject matter does not literally fall within the scope of the
> asserted claim. However, any analysis of infringement under the doctrine of
> equivalents necessarily deals with subject matter that is 'beyond,' 'ignored' by,
> and not included in the literal scope of a claim. Such subject matter is not
> necessarily 'specifically excluded' from coverage under the doctrine unless its
> inclusion is somehow inconsistent with the language of the claim. Literal failure
> to meet a claim limitation does not necessarily amount to 'specific exclusion.'[4]

More recently, the Federal Circuit has explained that, "while a claim limitation cannot be totally missing from an accused device, whether or not a limitation is deemed to be eviscerated must take into account that when two elements of the accused device perform a single function of

---

[4]Ethicon indicates that "in the All Elements rule, 'element' is used in the sense of a limitation of a claim," and that 'it is the limitation of a claim that counts in determining both validity and infringement, and a limitation may include descriptive terms." Thus, Ethicon indicated that the "All Elements rule might be better called the All Limitations rule." Ethicon, 149 F.3d at 1317 n.* (emphasis in original).

the patented invention or when separate claim limitations are combined into a single element of the accused device, a claim limitation is not necessarily vitiated, and the doctrine of equivalents may still apply if the differences are insubstantial. Eagle Comtronics, Inc. v. Arrow Communication Labs, Inc., 305 F.3d 1303, 1317 (Fed. Cir. 2002). In Eagle Comtronics, the claim at issue required that a collet assembly comprise a front cap, a rear insert body and a seal located between the front cap and the rear insert body. The accused device did not have separate elements corresponding to the front cap and rear insert body limitations. The defendant argued that the all elements rule required that the accused device contain (1) an equivalent for the claimed front cap, (2) an equivalent for the rear insert body; and (3) an equivalent for the claimed seal located between the two. The Federal Circuit rejected this argument, holding that "one-to-one" correspondence is not required. Id.

In the instant case, SRAM's doctrine of equivalents argument does not eliminate a clear structural limitation. The requirement of detent notches that engage the spring remains. SRAM is correct that AD-II has simply reversed the elements, moving the detent notches from the wall of the grip to the wall of the support housing, and then separating the support member from the mandril. Because the limitation is not eliminated, the all elements rule does not bar application of the doctrine of equivalents.

This leaves the issue of whether AD-II's changes are substantial, or whether the AD-II device performs the substantially same function in the substantially same way to achieve the same result. There can be no dispute that the detent notches in AD-II's device perform the same function as SRAM's – to engage the spring. AD-II argues, however, that its notches perform the function in a different way, with a different result. To support his argument, AD-II cites not to

expert analysis, but to SRAM's December 6, 1999, amendment to its patent application, in which SRAM explained to the PTO how rotation of the detent notches disengages the spring through column loading as a notched surface is rammed against the spring in one direction. AD-II then misquotes the amendment to state that the column loading is inherent in the structure and operation of the shifters covered by Claim 7, and is "a principle advantage of the invention."

There are two problems with this argument. The first is that the portion of the amendment to which AD-II refers was made in response to the examiner's rejection of Application Claims 42 and 45 for lack of antecedent basis for recitation of "column loading," and had nothing at all to do with Application Claim 36, which ultimately became Claim 7. Neither Application Claim 36 nor Claim 7 contain any limitation regarding column or cantilever loading, dealing instead with the existence of the detent notches.

Second, AD-II misquotes the amendment as indicating that column and cantilever loading are a principle advantage of the invention. In fact, the amendment provides that "the principles of cantilever and column loading are what make the invention produce a resistance to rotation in one direction that is different from the resistance to rotation in the other, a principle advantage of the invention." The principle advantage to which the amendment refers is the difference in resistance to rotation in one direction from the other, not the existence of cantilever and column loading. Because the second limitation contains no limitation that the detent notches be engaged by use of column loading force, the court rejects AD-II's argument that the amendment demonstrates that the notches in its device are not equivalent to the notches in the second limitation of Claim 7.

Because AD-II has provided no other evidence to refute SRAM's experts' claims that the differences between the notches on the wall of the housing and those on the wall of the grip are insubstantial, the court concludes that the AD-II device infringes the second limitation of Claim 7 under the doctrine of equivalents. There is simply no question that the notches on the AD-II device serve the same function (engaging the spring) in the same way (through rotation of the grip) to achieve the same result (releasing or pulling on a cable and shifting derailleur gears).

The third limitation of Claim 7 provides:

> A spring metal detent spring disposed between said grip and said support member and engageable with one of said detent positions, said detent spring providing first resistance against being forced out of said one detent position when said grip is rotated with respect to said support member in said first direction, said detent spring providing a second resistance against being forced out of said one detent position when said grip is rotated relative to said support member in said second direction, said second resistance being greater than said first resistance, the difference between the first and second resistance is due at least in part to the shape of the detent spring.

AD-II makes a repeated argument that its device has no spring that is "engageable with one of said detent positions," because of its argument, rejected above, that its detent notches do not infringe. Because the AD-II device's detent notches infringe under the doctrine of equivalents, the device also infringes the "engage with one of said detente positions" limitation under the doctrine of equivalents. Nor is there any question that the AD-II spring metal detent spring is "disposed" (which the court construes as "located") between the grip and the support member.

AD-II next argues that its shifters do not literally produce a "first resistance" or a "second resistance" for three reasons. First, AD-II repeats the already rejected argument that its shifters do not have a "said detent spring that is engageable with one of said detent positions." Second, it

15

argues that the spring of its shifters can never be "forced out of said one detent position" on the inner surface of a grip, because its notches are on the wall of the housing. Finally, it argues that its shifters lack a "said grip" and a "said support member" because neither has detent notches.

As is readily apparent, all these arguments are based on the fact that AD-II's devices do not literally infringe the second limitation of Claim 7 because its detent notches are located on the inner surface of the housing, not on the grip or the support member. This court has already determined that the AD-II shifters infringe this limitation under the doctrine of equivalents. In its response to SRAM's motion, AD-II presents no additional arguments that it does not otherwise infringe the third limitation under the doctrine of equivalents if this court rejects, as it has, AD-II's argument regarding the notches.

In its brief in support of its motion for summary judgment of non-infringement, however, AD-II argued that the court must construe the terms "a first resistance" and "a second resistance," as meaning the spring's resistance due to cantilever loading and column loading respectively. The court rejects this argument. First, nothing in Claim 7 suggests that the term "resistance" should be given any meaning other than its common meaning. The claim language is unambiguous. Thus, the court looks to the specification only to determine if a deviation from the clear language is specified. Interactive Gift, 231 F.3d at 865.

Nothing in the specification indicates that the patentee chose a different meaning for "resistance." True, the specification describes the type of resistances inherent to the invention, but those resistances are claimed in the narrower Claims 9 and 13. Claim 7 uses the term resistance in a general sense, requiring only that there be a difference and that the difference be caused in part by the shape of the detent spring. There is no question that the AD-II devices have

16

two different resistances that are due in part to the shape of the spring. To require a construction of resistance as AD-II urges would be to read the specification in a manner that limits the claimed term.

In addition, the usage of cantilever and column loading, which AD II seeks to "read into" claim 7, is specifically claimed in Claims 9, 13, 15 and 16, which are narrower claims. Thus, as SRAM argues, AD II's proposed construction would violate the rule of claim differentiation. As this court stated in Holland Co. v. Zeftek, Inc., 2001 WL 1002068 at *5-6 (N.D. Ill. 2001) (citations and internal quotations omitted):

> Where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad whether to avoid invalidity or to escape infringement. . . . As the Federal Circuit stated in D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1574 (fed Cir. 1985): Where, as here, the limitation sought to be 'read into' a claim already appears in another claim, the rule is far more than 'general.' It is fixed. It is long and established and enjoys immutable and universally applicable status comparatively rare among rules of law. Without it, the entire statutory and regulatory structure governing the drafting, submission, examination, allowance and enforceability of claims would crumble.

Moreover, AD-II's argument for construction of resistance is again predicated on its faulty reading of the amendment. As noted above, the section of the amendment describing the cantilever and column loading forces was directed to providing an antecedent basis for those terms which appear in Claims 9, 13, 15 and 16. During the prosecution of the patent, Claim 7 had been amended to provide that the difference between the first and second resistance be due at least in part to the shape of the detent spring. It was that amendment that distinguished Claim 7 over SRAM's prior art symmetrical leaf spring, the shape of which contributed nothing to creating a difference in resistance. It was the advantage of a difference in resistance that was stated as a "principle advantage." The fact that column and cantilever loading helped achieve

17

this difference is not what is claimed in Claim 7, and to construe the claim as AD-II urges would be to read a new limitation into the claim.

Absent its construction argument, AD-II presents no other argument that it does not infringe the third limitation, except for its already rejected argument that the all elements rule precludes a finding of infringement because of the location of the detent notches. Accordingly, the court concludes that AD-II literally infringes the preamble and the first limitation of Claim 7, and infringes the remaining limitations under the doctrine of equivalents. Accordingly, the court grants SRAM's motion for summary judgment of infringement.

## II. AD-II's Unfair Competition Claims

All of AD-II's unfair competition claims are based on SRAM having threatened AD-II's customers with infringement liability because of their purchase of AD-II's shifters. AD-II admits that all of its claims are preempted by federal patent law unless the communications were sent in bad faith. See Dow Chemical Co. v. Exxon Corp., 139 F.3d 1470 (Fed. Cir. 1998). Because the court has granted summary judgment of infringement in favor of SRAM, no bad faith finding is possible. Accordingly, summary judgment is granted to SRAM on all of AD-II's unfair competition claims.

## CONCLUSION

For the reasons set forth above, AD-II's motions for summary judgment are denied in all respects, and SRAM's motion for partial summary judgment on infringement on Claim 7 is granted. Summary judgment is granted to SRAM on all of AD-II's unfair competition claims. This case is set for a status report on April 9, 2003, at 9:00 a.m.

**ENTER:**     **March 27, 2003**

**Robert W. Gettleman**
**United States District Judge**